**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| STEVEN PALUMBO, individually, and on behalf of all others similarly situated, | Civil Action No. 3:21-cv-01818-N |
| Plaintiff, | |
| v. | |
| AT&T SERVICES, INC. and DIRECTV, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Steven Palumbo, by and through his undersigned counsel, brings this action against Defendants AT&T Services, Inc. and DirecTV, LLC (collectively, "AT&T" or "Defendant"), on his own behalf and on behalf of all other similarly situated. Upon personal knowledge of the facts pertaining to himself and on information and belief as to all other matters, Plaintiff alleges as follows:

**NATURE OF THE CASE**

1.      This action concerns AT&T promising prospective new customers promotional reward cards in a substantial monetary amount (e.g., $100 to $400) (hereafter "Reward Card") to induce new customers to contract with AT&T for its various communications-related services. AT&T's actions and restrictions relating to the Reward Card, which are not adequately disclosed to new customers prior their contracting with AT&T, renders illusory the benefit that AT&T promised.

2.      Plaintiff brings this action, on a nationwide class action basis, to put an end to AT&T's deceptive and unfair practices and to redress the injuries AT&T has caused, and is

1

causing, to similarly situated individuals. Accordingly, Plaintiff seeks, among other things, injunctive relief, damages, including punitive damages, civil penalties, costs and disgorgement.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because: (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) Plaintiff and Class Members are citizens of states that are diverse from Defendant's domicile; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

4.      Venue is proper in this judicial District under 28 U.S.C. § 1391(b)(2) in that AT&T conducts business in, and a substantial part of the events giving rise to the Plaintiff's and Class Members' claims occurred in, this judicial District.

## PARTIES

5.      Plaintiff Steven Palumbo is a resident of the State of Florida. Plaintiff was induced into purchasing a telecommunications service bundle from AT&T and entering into a new services contract with AT&T, based on AT&T's promise to provide him with a $200 Reward Card that he would have the opportunity to use in full.

6.      Defendant AT&T Services, Inc. is part of the world's largest telecommunications company. It is a Delaware corporation headquartered in Dallas, Texas. AT&T Services, Inc.'s principal executive office, including its senior marketing management, are located in Dallas, TX, where its nationwide marketing policies and practices are established and disseminated throughout the company.

7.      Defendant DirecTV, LLC is affiliated with Defendant AT&T Services, Inc. Defendant DirecTV, LLC is a California company headquartered in California.

## FACTUAL BACKGROUND

A.      **AT&T's Practices in Offering, Distributing and Activating Reward Cards**

8.      AT&T offers to prospective new customers, through advertisements in various forms of print and online media, a promotional Reward Card if they agree to contract with AT&T to purchase bundled AT&T telecommunications services such as broadband internet, cellular telephone and streaming television services such as "AT&T TV," U-Verse and DirecTV.  The Reward Cards range in value, often between $100 and $400, depending upon the particular promotion AT&T is offering and have a 150-day expiry period.  These offers are conveyed on AT&T's websites, in internet banner ads, and in hard copy print advertising materials.  An appendix of examples of such offers are attached as Exhibit 1.

9.      AT&T delays sending Reward Cards to new customers.  Rather than sending the card to new customers immediately after they contract and pay for their new AT&T services, AT&T either never sends the Reward Card or delays sending it such that new customer recipients don't receive it until near or after the card's short 150-day expiry period.  AT&T then has a policy of refusing to honor or replace expired Reward Cards.

10.     Reward Card recipients are first required to redeem their right to receive the card, but can do so only after AT&T sends them an email or mail notification. AT&T delays sending such notification until at least a month or more after the new customer has contracted with AT&T. Such emails are not readily distinguishable in the recipients email in-box from a host of other emails AT&T sends to customers and may be missed or sent to a junk email folder.  AT&T's regular mail reward card notifications also are not readily distinguishable from other junk mail promotions AT&T sends to customers.

11.     New customers are subject to a redemption process before receiving the Reward Card.  This process includes a variety of restrictions and requires the new customer to re-send to AT&T documentation and information that AT&T already has.  A primary purpose of the process

3

is to create hurdles for new customers to actually receive the promised Reward Cards because it is only after the redemption process is completed that AT&T permits the Reward Card to be sent to the new customer. Once the redemption process is complete, however, the Reward Card is not immediately delivered. In many instances, the card is never delivered or is delivered near or after the 150-day use period has elapsed.

12.    Once received by the customer, Reward Cards must then be "activated" by the new customer and are subject to a variety of new conditions and restrictions that further reduce or limit their value. For example, AT&T begins the 150-day use period at the time the Reward Card is "issued" not the time the card is "activated." Accordingly, the 150-day use period has already begun to run before the new customer has received and can activate the Reward Card.

13.    AT&T further restricts, if not prevents, the full usage of Reward Cards even if they are delivered and activated before the expiry of the 150-day use period. When a card recipient spends a threshold amount available on the Reward Card, the card is frozen, and the recipient is blocked from spending the remaining value for an extended period of time.

14.    AT&T's processes, limitations, and restrictions on the Reward Cards and, therefore, their adverse impact that reduces the actual monetary value of the Reward Card to the prospective new customer, are not adequately disclosed at the time new customers are induced to enter into their contracts for bundled services with AT&T. Once the new customer contracts with AT&T, they incur substantial obligations designed to discourage early customer termination.

15.    AT&T's promotional advertisements regarding the Reward Card do not adequately disclose any of the numerous restrictions and limitations that would apply to the card. *See* attached Exhibit 1. For example, the below advertisements provide no disclosures whatsoever:





16.     In each of the foregoing ways, AT&T reduces, if not eliminates, the promised value of the Reward Card and the new customer's ability to fully utilize the card.

17.     The telecommunications industry is highly competitive.  Consequently, the sale of telecommunications services, and the corresponding customer base among the largest providers that offer similar services, is primarily driven by price. To offer such services at attractive price points and to otherwise induce new customers to contract with AT&T, AT&T promises Reward Cards as a prominent component of its marketing campaigns for its telecommunications services.

18.     AT&T engages in these practices on a nationwide basis.  It does so not only to induce new customers to contract with AT&T, but also to reduce its per subscriber acquisition costs and increase its per subscriber revenues and profits.

19.     Per subscriber acquisition costs and revenues are important financial metrics to telecommunications companies like AT&T that compete heavily for new subscribers.  These metrics affect not only the value of AT&T's assets, but more importantly its stock price. Accordingly, AT&T is highly motivated to minimize its per subscriber acquisition cost and can do that in part by minimizing the actual monetary benefit of the Reward Cards it offers.

5

### B.      Plaintiff's Experience With AT&T's Reward Card

20.      Plaintiff received an offer for bundled television and telecommunications services from AT&T on May 15, 2020. The offer specifically stated that there would be a $200 gift card reward if Plaintiff purchased a bundle.

21.      Like most consumers, Plaintiff is a price-conscious shopper who considers all promotions and discounts when making purchases. As such, induced by AT&T's $200 reward card offer Plaintiff signed an agreement for bundled television and internet services with an AT&T representative on May 16, 2020, through communications with the AT&T representative over the telephone and through email.

22.      Plaintiff paid for his services at the time of agreeing to the bundled services and was told to expect to receive his Reward Card in the mail in a few days. Plaintiff did not receive his Reward Card until on or about January 7, 2021. The card had expired in December 2020. Plaintiff thereafter contacted AT&T Customer Service and asked them to replace his expired Reward Card but they refused to do so.

## CHOICE OF LAW

23.      The State of Texas has a significant interest in regulating the conduct of businesses operating within its borders. Texas seeks to protect the rights and interests of citizens of the United States against a company headquartered and doing business in Texas. Texas has a greater interest in the nationwide claims of Plaintiff and members of the Nationwide Class (defined below) than any other state and is most intimately concerned with the claims and outcome of this litigation.

24.      The corporate headquarters of AT&T Services, Inc., located in Dallas, Texas, is the "nerve center" of its business activities – the place where its high-level officers direct, control, and

coordinate the company's activities, including its data security functions and major policy, financial, and legal decisions.

26.     Defendant's marketing and promotional efforts relating to the Reward Card program at issue, and the corporate decisions surrounding such efforts, were made from and in Texas.

26.     Defendant's breaches of duty to Plaintiff and Class Members emanated from Texas.

27.     Application of Texas law to the Nationwide Class with respect to Plaintiff's and Class Members' claims is neither arbitrary nor fundamentally unfair because Texas has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiff and the Nationwide Class.

28.     Under Texas's choice of law principles, which are applicable to this action, the common law of Texas applies to the nationwide common law claims of all Nationwide Class members. Additionally, given Texas's significant interest in regulating the conduct of businesses operating within its borders, the Texas DTPA may be applied to non-resident consumer plaintiffs as against this resident-defendant.  Further, the corporate headquarters of AT&T Services, Inc. are located in Dallas, Texas, which is the "nerve center" of Defendant's business activities – the place where its high-level officers direct, control, and coordinate the company's activities, including its data security functions and major policy, financial, and legal decisions.

## CLASS ACTION ALLEGATIONS

29.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed Nationwide Class and Florida Subclass, defined as follows:

> All AT&T consumers residing in any of the fifty States, the District of Columbia, Puerto Rico, or any other United States territory or possession, who purchased bundled telecommunications services from AT&T and (i) never

received the promised AT&T Reward Card, (ii) received an expired AT&T Reward Card and/or (iii) received an AT&T Reward Card but were unable to activate the AT&T Reward Card they received during the time period from the date commencing four years prior to the filing the complaint.

In addition, Plaintiff brings this action on behalf of the following proposed Florida Subclass, defined as follows:

All AT&T consumers residing in Florida who purchased bundled telecommunications services from AT&T and (i) never received the promised AT&T Reward Card, (ii) received an expired AT&T Reward Card, and/or (iii) received an AT&T Reward Card but were unable to activate the AT&T Reward Card they received during the time period from the date commencing four years prior to the filing the complaint.

30.     Both the proposed Nationwide Class and the proposed Florida Subclass will be collectively referred to as the Class, except where it is necessary to differentiate them.

31.     Plaintiff reserves the right to amend the above definitions or to propose alternative or additional subclasses in subsequent pleadings and motions for class certification.

32.     Excluded from the Class are: (a) AT&T, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; (b) Plaintiff's Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly excluded themselves from the Class.

33.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

34.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** Plaintiff does not know the exact number of Class Members because such information is in the exclusive control of the Defendant. However, Plaintiff believes that due to the nature of the trade and commerce involved,

8

Class Members are sufficiently numerous, most likely thousands of consumers, and geographically dispersed throughout the State of Florida and all other fifty states, and that joinder of all Class Members is impracticable. The information as to the identity of the Class Members can be readily determined from records maintained by the Defendant, such as reward card eligibility emails, sales records, and through public notification.

36.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact that predominate over any questions affecting individual Class Members, including:

a.      What statements were made by AT&T in its marketing campaign;

b.      Whether AT&T's advertisements and reward card program are likely to deceive;

c.      Whether Defendant violated Texas DTPA (defined below), the FDUPTA (defined below) or similar laws in other states;

d.      Whether AT&T has been unjustly enriched by its conduct;

e.      Whether Plaintiff and Class Members have been damaged and, if so, the extent of such damages; and

f.      Whether Plaintiff and Class Members are entitled to equitable or declaratory relief, including but not limited to, restitution and injunctive relief.

36.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

37.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of Class Members because, among other things, Plaintiff and Class Members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on his own behalf and on the behalf of Class Members, and no defense is available to Defendant that is unique to Plaintiff.

38.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of Class Members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation. Thus, the Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

39.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION[1]

---

[1]      On December 17, 2021, Plaintiff mailed to Defendant's agent notice pursuant to the Texas Deceptive Trade Practices Act-Consumer Protection Act V.T.C.A. Business and Commerce Code § 17.41 *et seq*. ("Texas DTPA").  Defendant has until approximately February 15, 2022 (or shortly thereafter) to respond. If Defendant is unwilling to settle this action, Plaintiff intends to seek leave to amend his complaint to bring allegations that Defendant violated the Texas Deceptive Trade Practices Act-Consumer Protection Act due to Defendant's false advertising.

The Texas DTPA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

In Texas, false advertising is illegal. False advertising is a broad category, but involves any false statements related to a seller's product. Typically, only objective statements violate Texas's false advertising laws. However, subjective advertising claims can also violate Texas's false advertising laws.

If necessary, Plaintiff will seek leave to amend in order to allege Defendant's actions and omissions, including Defendant's  promotional campaigns that induce prospective customers to sign up for bundled telecommunications services by promising Reward Cards of various values that are not timely delivered and/or are improperly restricted thereby depriving Plaintiff and Class Members of the benefits Defendant promised to induce Plaintiff and Class Members to purchase bundled telecommunications services, which violate the Texas DTPA by, at a minimum, employing deception, deceptive acts or practices, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of television service bundles.

If necessary, Plaintiff will seek leave to amend to allege that Defendant engaged in misleading, false, unfair, or deceptive acts or practices that violated the Texas DTPA by marketing a Reward Card program but failing to ensure that consumers actually receive a valid Reward Card.

Defendant's unfair and deceptive acts or practices, including false advertising, were likely to and did in fact deceive reasonable consumers, including Plaintiff and Class Members.

Plaintiff and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations. Plaintiff and Class Members who purchased service bundles from AT&T would not have purchased these bundles at all, or alternatively, would have purchased a different set of services, in the absence of Defendant's wrongful conduct alleged herein.

Under Texas law, victims of false and misleading advertising are entitled to actual damages and treble damages. Courts can award victims injunctive relief, attorneys fees and costs, and restitution. There may be additional remedies available through other laws. Additionally, courts

## COUNT I: VIOLATION OF FLORIDA'S UNFAIR &
## DECEPTIVE TRADE PRACTICES ACT (Fla. Stat. § 501.201, et seq.)
### (On behalf of the Nationwide Class or, alternatively, the Florida Subclass)

40.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

41.     Plaintiff brings this action against Defendant on behalf of himself and all others similarly situated against Defendants.

42.     Plaintiff is a consumer within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

43.     Defendant is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

44.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1). Defendant participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

45.     In the course of their business, Defendant ran a promotional campaign that enticed consumers to sign up for service bundles in order to receive a $200 Reward Card. However, after accepting Plaintiff's and Class Members' money, Defendant sent Plaintiff and Class Members Reward Cards that had already expired, thereby depriving Plaintiff and Class Members of receiving the specific benefit they were offered in exchange for signing up for the bundled services.

---

can award restraining orders against the offender and issue civil penalties up to $2,000 per violation, not to exceed $10,000. The penalties become harsher when the consumer victim is age 65 or older, and courts can award $10,000 per violation up to $100,000.

Pursuant to Tex. Bus. & Com. § 17.50, Plaintiff and the Class will also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Texas DTPA.

46.     Defendant thus violated FDUPTA by, at a minimum employing deception, deceptive acts or practices, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of television service bundles.

47.     Defendant engaged in misleading, false, unfair or deceptive acts or practices that violated FDUTPA by marketing a reward card program but failing to ensure that consumers actually receive a valid reward card.

48.     Defendant's unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Class Members.

49.     Plaintiff and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations. Plaintiff and Class Members would not have purchased these bundles at all, or alternatively, would have purchased a different set of services, had they been aware of Defendant's unfair and deceptive acts or practice relating to its Reward Card program.

50.     Plaintiff and Class Members are at risk of irreparable injury as a result of Defendant's acts and omissions in violation of FDUTPA, which violations present a continuing risk to Plaintiff and Class Members.

51.     As a direct and proximate result of Defendant's violations of FDUTPA, Plaintiff and Class Members have suffered injury-in-fact and/or actual damage, to be further determined at trial.

52.     Plaintiff and Class Members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

53.     Plaintiff also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under FDUTPA.

## COUNT II: NEGLIGENT MISREPRESENTATION
### (On behalf of the Nationwide Class or, alternatively, the Florida Subclass)

54.      Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

55.     Defendant misrepresented to Plaintiff and Class Members the benefits and restrictions of the Reward Cards.

56.     In the course of its business dealings with Plaintiff and Class Members, Defendant omitted material information regarding the restrictions and limitations of the Reward Cards.

57.     Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care when making or issuing statements or disclosures regarding the nature of the benefits and limitations of the Reward Cards.

58.     The statements or disclosures regarding the restrictions and limitations of the Reward Cards were likely to deceive and confuse Plaintiff and Class Members.

59.     The referenced claims have also influenced or are likely to influence future decisions of consumers and the buying public. Plaintiff and Class Members, by purchasing telecommunications bundles with the expectation of receiving a Reward Card, reasonably acted in reliance upon the purported truth of the representations and omissions made by Defendant.

60.     As a direct and proximate result of the Plaintiff's and Class Members' reliance upon the representations and omissions made (or not made) by Defendant, as described above, Plaintiff and Class Members have sustained damages and ascertainable loss.

## COUNT III: UNJUST ENRICHMENT

**(On behalf of the Nationwide Class or, alternatively, the Florida Subclass)**

61.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.     Defendant has benefitted from an unjust profit and increased business related to its sale of television, internet and other telecommunications services using the deceptive marketing practice of promising a $200 promotional Reward Card, but failing to timely deliver such Reward Card.

63.     Defendant has received and retained unjust benefits from the Plaintiff and Class Members, and inequity has resulted.

64.     It is inequitable and unconscionable for Defendant to retain these benefits.

65.     Because Defendant concealed its deceptive practices, Plaintiff and Class Members were not aware of the true facts concerning the promotional Reward Card they were to receive and did they did not benefit from Defendant's misconduct.

66.     Defendant knowingly accepted the unjust benefits of its misconduct alleged herein.

67.     As a result of Defendant's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and Class Members, in an amount to be proven at trial.

## COUNT IV: DECLARATORY RELIEF
**(On behalf of the Nationwide Class or, alternatively, the Florida Subclass)**

68.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

69.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

70.     Plaintiff and Class Members allege that any arbitration provision in Defendant's documentation associated with the use of its Reward Cards are null and void to the extent that Plaintiff and Class Members could not active and use such cards due to Defendants' wrongful practices alleged herein.

71.     Because all contractual provisions associated with the Reward Cards, including AT&T's arbitration provision, are not accepted by the card recipient, Plaintiff and Class Members here, until the Reward Card is activated and used, AT&T's contractual provisions, including the arbitration provision, are never accepted and are therefore inapplicable.

72.     As detailed above, Plaintiff and Class Members allege that Defendant misrepresented the benefits of the Reward Card and Inadequately disclosed information about restrictions on its use, rendering Plaintiff and Class Members' acceptance of any contractual provisions associated with AT&T's Reward Cards, including its arbitration provision, a mistake of fact such that no meeting of the minds occurred regarding such provisions as between Plaintiff and Class Members, on the one hand, and Defendant, on the other.  Moreover, Defendant'' misrepresentations concerning the benefits and restrictions of the Reward Card, renders the arbitration provision void *ab initio*.

73.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.  Defendants immediately shall provide Plaintiff and Class Members with access to the full unused value of the Reward Cards they were issued; and

    b.  The arbitration provision is null and void, *ab initio*, Defendants are not entitled to dismissal of this action on the basis of the arbitration provision, and Plaintiff

and Class Members are entitled to pursue their claims in this Court.

74.     This Court also should issue corresponding prospective injunctive relief requiring Defendants to revise their disclosures relating to the Reward Card and modify their policies, procedures and practices regarding the marketing and distribution of such Reward Cards in any promotional context.

75.     If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy.

76.     The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued.

77.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public, as well as eliminate the additional injuries that would result to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

(i)     An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

(ii)    An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

(iii)   Compensatory and general damages according to proof;

(iv)    Special damages according to proof;

(v)     Treble damages pursuant to Tex. Bus. & Com. §§ 17.41, et seq.;

(vi)    Restitution and disgorgement according to proof;

(vii)   Injunctive relief against Defendant to prevent future wrongful conduct;

(viii)  Prejudgment interest at the maximum legal rate;

(ix)    Costs of the proceedings herein;

(x)     Reasonable attorneys' fees; and

(xi)    All such other and further relief as the Court deems just.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all

claims in this Class Action Complaint so triable.

Dated: December 20, 2021                     Respectfully submitted,

ATTORNEYS'                                   *s/William B. Federman*
LIEN CLAIMED                                 William B. Federman,
                                             TX Bar No. 00794935
                                             John Charles Sherwood,
                                             TX Bar No. 18254700
                                             FEDERMAN & SHERWOOD
                                             212 W. Spring Valley Road,
                                             Richardson, Texas 75081
                                             AND
                                             10205 N. Pennsylvania Ave.
                                             Oklahoma City, OK 73120
                                             Phone: (405) 235-1560
                                             Fax: (405) 239-2112
                                             wbf@federmanlaw.com
                                             jcs@federmanlaw.com

                                             James M. Evangelista*
                                             David J. Worley*
                                             Kristi Stahnke McGregor*
                                             Hannah Drosky*
                                             EVANGELISTA WORLEY, LLC
                                             500 Sugar Mill Road
                                             Suite 245A
                                             Atlanta, GA 30350
                                             Tel: (404) 205-8400
                                             Facsimile: (404) 205-8395
                                             jim@ewlawllc.com
                                             david@ewlawllc.com

kristi@ewlawllc.com
leslie@ewlawllc.com

*pro hac vice applications forthcoming*