IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEVEN PALUMBO, individually, and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>AT&T SERVICES, INC. and DIRECTV, LLC,<br><br>   Defendants. | Civil Action No. 3:21-cv-01818-N<br><br><br><br>**Hon. David C. Godbey**<br><br>**JURY TRIAL DEMANDED** |

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Steven Palumbo and Jill Witte ("Plaintiffs"), by and through their undersigned counsel, bring this action against Defendants AT&T Services, Inc. and DirecTV, LLC (collectively, "AT&T" or "Defendants"), individually and on behalf of all other similarly situated, upon personal knowledge of the facts pertaining to themselves and their own acts and experiences, and upon information and belief as to all other matters, allege as follows:

### NATURE OF THE CASE

1. This action concerns AT&T promising prospective new customers promotional reward cards in a substantial monetary amount (e.g., $100 to $400) (hereafter "Reward Card") to induce new customers to contract with AT&T for its various communications-related services. AT&T's actions and restrictions relating to the Reward Card, which are not adequately disclosed to new customers prior their contracting with AT&T, renders illusory the benefit that AT&T promised.

2. Plaintiffs bring this action, on a nationwide class action basis, to put an end to AT&T's deceptive and unfair practices and to redress the injuries AT&T has caused, and is

1

causing, to similarly situated individuals. Accordingly, Plaintiffs seek, among other things, injunctive relief, damages, including punitive damages, civil penalties, costs and disgorgement.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over Plaintiffs' claims pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because: (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) Plaintiffs and Class Members are citizens of states that are diverse from Defendants' domicile; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

4. Venue is proper in this judicial District under 28 U.S.C. § 1391(b)(2) in that AT&T conducts business in, and a substantial part of the events giving rise to the Plaintiffs' and Class Members' claims occurred in, this judicial District.

## PARTIES

5. Plaintiff Steven Palumbo is a resident of the State of Florida. Plaintiff was induced into purchasing a telecommunications service bundle from AT&T and entering into a new services contract with AT&T, based on AT&T's promise to provide him with a $200 Reward Card that he would have the opportunity to use in full.

6. Plaintiff Jill Witte is a resident of the State of Florida. Plaintiff was induced into purchasing a telecommunications service bundle from AT&T and entering into a new services contract with AT&T, based on AT&T's promise to provide her with a $150 Reward Card that she would have the opportunity to use in full.

7. Defendant AT&T Services, Inc. is part of the world's largest telecommunications company. It is a Delaware corporation headquartered in Dallas, Texas. AT&T Services, Inc.'s principal executive office, including its senior marketing management, are located in Dallas, TX,

where its nationwide marketing policies and practices are established and disseminated throughout the company.

8. Defendant DirecTV, LLC is affiliated with Defendant AT&T Services, Inc. Defendant DirecTV, LLC is a California company headquartered in California.

## FACTUAL BACKGROUND

### A. AT&T's Practices in Offering, Distributing and Activating Reward Cards

9. AT&T offers to prospective new customers, through advertisements in various forms of print and online media, a promotional Reward Card if they agree to contract with AT&T to purchase bundled AT&T telecommunications services such as broadband internet, cellular telephone and streaming television services such as "AT&T TV," U-Verse and DirectTV. The Reward Cards range in value, often between $100 and $400, depending upon the particular promotion AT&T is offering and have a 150-day expiry period or AT&T attempts to "bait" and "switch" to a lesser value card. These offers are conveyed on AT&T's websites, in internet banner ads, and in hard copy print advertising materials. An appendix of examples of such offers are attached as Exhibit 1.

10. AT&T delays sending Reward Cards to new customers. Rather than sending the card to new customers immediately after they contract and pay for their new AT&T services, AT&T either never sends the Reward Card or delays sending it such that new customer recipients do not receive it until near or after the card's short 150-day expiry period. AT&T then has a policy of refusing to honor or replace expired Reward Cards.

11. Reward Card recipients are first required to redeem their right to receive the card but can do so only after AT&T sends them an email or mail notification. AT&T delays sending such notification until at least a month or more after the new customer has contracted with AT&T. Such emails are not readily distinguishable in the recipients email in-box from a host of other

emails AT&T sends to customers and may be missed or sent to a junk email folder. AT&T's regular mail Reward Card notifications also are not readily distinguishable from other junk mail promotions AT&T sends to customers.

12. New customers are subject to a redemption process before receiving the Reward Card. This process includes a variety of restrictions and requires the new customer to re-send to AT&T documentation and information that AT&T already has. A primary purpose of the process is to create hurdles for new customers to actually receive the promised Reward Cards because it is only after the redemption process is completed that AT&T permits the Reward Card to be sent to the new customer. Once the redemption process is complete, however, the Reward Card is not immediately delivered. In many instances, the card is never delivered or is delivered near or after the 150-day use period has elapsed.

13. Once received by the customer, Reward Cards must then be "activated" by the new customer and are subject to a variety of new conditions and restrictions that further reduce or limit their value. For example, AT&T begins the 150-day use period at the time the Reward Card is "issued" not the time the card is "activated." Accordingly, the 150-day use period has already begun to run before the new customer has received and can activate the Reward Card.

14. AT&T further restricts, if not prevents, the full usage of Reward Cards even if they are delivered and activated before the expiry of the 150-day use period. When a card recipient spends a threshold amount available on the Reward Card, the card is frozen, and the recipient is blocked from spending the remaining value for an extended period of time.

15. AT&T's processes, limitations, and restrictions on the Reward Cards and, therefore, their adverse impact that reduces the actual monetary value of the Reward Card to the prospective new customer, are not adequately disclosed at the time new customers are induced to

enter into their contracts for bundled services with AT&T. Once the new customer contracts with AT&T, they incur substantial obligations designed to discourage early customer termination.

16. AT&T's promotional advertisements regarding the Reward Card do not adequately disclose any of the numerous restrictions and limitations that would apply to the card. *See* attached Exhibit 1. For example, the below advertisements provide no disclosures whatsoever:

 

17. In each of the foregoing ways, AT&T reduces, if not eliminates, the promised value of the Reward Card and the new customer's ability to fully utilize the card.

18. The telecommunications industry is highly competitive. Consequently, the sale of telecommunications services, and the corresponding customer base among the largest providers that offer similar services, is primarily driven by price. To offer such services at attractive price points and to otherwise induce new customers to contract with AT&T, AT&T promises Reward Cards as a prominent component of its marketing campaigns for its telecommunications services.

19. AT&T engages in these practices on a nationwide basis. It does so not only to induce new customers to contract with AT&T, but also to reduce its per subscriber acquisition costs and increase its per subscriber revenues and profits.

5

20. Per subscriber acquisition costs and revenues are important financial metrics to telecommunications companies like AT&T that compete heavily for new subscribers. These metrics affect not only the value of AT&T's assets, but more importantly its stock price. Accordingly, AT&T is highly motivated to minimize its per subscriber acquisition cost and can do that in part by minimizing the actual monetary benefit of the Reward Cards it offers.

### B. Plaintiff Palumbo's Experience With AT&T's Reward Card

21. Plaintiff Palumbo received an offer for bundled television and telecommunications services from AT&T on May 15, 2020. The offer specifically stated that there would be a $200 "gift card" reward if Plaintiff purchased a bundle.

22. Like most consumers, Plaintiff is a price-conscious shopper who considers all promotions and discounts when making purchases. As such, induced by AT&T's $200 reward card offer Plaintiff signed an agreement for bundled television and internet services with an AT&T representative on May 16, 2020, through communications with the AT&T representative over the telephone and through email.

23. Plaintiff paid for his services at the time of agreeing to the bundled services and was told to expect to receive his Reward Card in the mail in a few days. Plaintiff did not receive his Reward Card until on or about January 7, 2021. The card had expired in December 2020. Plaintiff thereafter contacted AT&T Customer Service and asked them to replace his expired Reward Card but they refused to do so.

### C. Plaintiff Witte's Experience With AT&T's Reward Card

24. Plaintiff Witte was moving her residence and researched numerous offers from different companies that offered bundled services. She had Comcast for her cable and wireless service and decided to sign up for AT&T's bundled television and telecommunications services because of her eligibility for the $150 Reward Card which was confirmed by the AT&T

6

representative when she signed up for the service on October 12, 2021. Plaintiff was specifically told that there would be a $150 Reward Card if Plaintiff purchased a bundle.

25.     Like most consumers, Plaintiff is a price-conscious shopper who considers all promotions and discounts when making purchases. As such, induced by AT&T's $150 Reward Card offer Plaintiff signed an agreement for bundled television and internet services with an AT&T representative on October 12, 2021, through communications with the AT&T representative over the telephone and through email.

26.     Plaintiff paid for her services at the time of agreeing to the bundled services and was told to expect to receive her Reward Card in the mail within 6-8 weeks. Plaintiff did not receive her Reward Card during that time and in December of 2021 Plaintiff made multiple phone calls to AT&T Customer Service to inquire about the Reward Card and was told that she was not eligible for the $150 Reward Card but continued to negotiate with the representative who said they would only send her a $50 Reward Card which she received on January 4, 2022.

## CHOICE OF LAW

27.     The State of Texas has a significant interest in regulating the conduct of businesses operating within its borders. Texas seeks to protect the rights and interests of citizens of the United States against a company headquartered and doing business in Texas. Texas has a greater interest in the nationwide claims of Plaintiffs and members of the Nationwide Class (defined below) than any other state and is most intimately concerned with the claims and outcome of this litigation.

28.     The corporate headquarters of AT&T, located in Dallas, Texas, is the "nerve center" of its business activities – the place where its high-level officers direct, control, and coordinate the company's activities, including its data security functions and major policy, financial, and legal decisions.

29. Defendants' marketing and promotional efforts relating to the Reward Card program at issue, and the corporate decisions surrounding such efforts, were made from and in Texas.

30. Defendants' breaches of duty to Plaintiffs and Class Members emanated from Texas.

31. Application of Texas law to the Nationwide Class with respect to Plaintiffs' and Class Members' claims are neither arbitrary nor fundamentally unfair because Texas has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiffs and the Nationwide Class.

## CLASS ACTION ALLEGATIONS

32. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the following proposed Nationwide Class and Florida Subclass, defined as follows:

> All AT&T consumers residing in any of the fifty States, the District of Columbia, Puerto Rico, or any other United States territory or possession, who purchased bundled telecommunications services from AT&T and (i) never received the promised AT&T Reward Card, (ii) received an expired AT&T Reward Card and/or (iii) received an AT&T Reward Card but were unable to activate the AT&T Reward Card they received during the time period from the date commencing four years prior to the filing the complaint.

In addition, Plaintiffs bring this action on behalf of the following proposed Florida Subclass, defined as follows:

> All AT&T consumers residing in Florida who purchased bundled telecommunications services from AT&T and (i) never received the promised AT&T Reward Card, (ii) received an expired AT&T Reward Card, and/or (iii) received an AT&T Reward Card but were unable to activate the AT&T Reward Card they received during the time period from the date commencing four years prior to the filing the complaint.

33. The proposed Nationwide Class and the proposed Florida Subclass will be collectively referred to as the Class, except where it is necessary to differentiate them.

34. Plaintiffs reserve the right to amend the above definitions or to propose alternative or additional subclasses in subsequent pleadings and motions for class certification.

35. Excluded from the Class are: (a) AT&T, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly excluded themselves from the Class.

36. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** Plaintiffs do not know the exact number of Class Members because such information is in the exclusive control of the Defendants. However, Plaintiffs believe that due to the nature of the trade and commerce involved, Class Members are sufficiently numerous, most likely thousands of consumers, and geographically dispersed throughout the State of Florida and all other fifty states, and that joinder of all Class Members is impracticable. The information as to the identity of the Class Members can be readily determined from records maintained by the Defendants, such as reward card eligibility emails, sales records, and through public notification.

38. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact that predominate over any questions affecting individual Class Members, including:

    a.    What statements were made by AT&T in its marketing campaign;

    b.    Whether AT&T's advertisements and reward card program are likely to deceive;

    c.    Whether Defendants violated Texas DTPA (defined below), the FDUPTA (defined below) or similar laws in other states;

    d.    Whether AT&T has been unjustly enriched by its conduct;

    e.    Whether Plaintiffs and Class Members have been damaged and, if so, the extent of such damages; and

    f.    Whether Plaintiffs and Class Members are entitled to equitable or declaratory relief, including but not limited to, restitution and injunctive relief.

39.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

40.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of Class Members because, among other things, Plaintiffs and Class Members were injured through the substantially uniform misconduct described above. Plaintiffs are advancing the same claims and legal theories on their own behalf and on the behalf of Class Members, and no defense is available to Defendants that are unique to Plaintiffs.

41.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of Class Members. Additionally, Plaintiffs have retained counsel competent and

experienced in complex class action litigation. Thus, the Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

42. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

**COUNT I: VIOLATION OF TEXAS DECEPTIVE TRADE
PRACTICES ACT (Tex. Bus. & Com. Code § 17.41, et seq.)
(On behalf of the Nationwide Class)**

43. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

44. Plaintiffs bring this action against Defendants on behalf of themselves and all others similarly situated.

45. Plaintiffs and Class Members are "consumer[s]" as defined by Texas Deceptive Trade Practices-Consumer Protection Act ("TX DTPA") Tex. Bus. & Com. Code § 17.45(4).

46. Defendants are a "person" as defined by Tex. Bus. & Com. Code § 17.45(3).

47. Defendants engaged in trade or commerce as defined by Tex. Bus. & Com. Code § 17.45(6).

48. The TX DTPA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

49. In the course of their business, Defendants ran a promotional campaign that enticed consumers to sign up for service bundles in order to receive up to a $400 Reward Card. However, after accepting Plaintiffs' and Class Members' money, Defendants sent Plaintiffs and Class Members Reward Cards that had already expired, sent an amount less than what was promised or did not send them at all, thereby depriving Plaintiffs and Class Members of receiving the specific benefit they were offered in exchange for signing up for the bundled services.

50. Defendants thus violated TX DTPA by, at a minimum employing deception, deceptive acts or practices, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of television service bundles.

51. Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated TX DTPA by marketing a reward card program but failing to ensure that consumers actually receive a valid reward card.

52. Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Class Members.

53. Plaintiffs and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations. Plaintiffs and Class Members would not have purchased these bundles at all, or alternatively, would have purchased a different set of services, had they been aware of Defendants' unfair and deceptive acts or practice relating to its Reward Card program.

54. Plaintiffs and Class Members are at risk of irreparable injury as a result of Defendants' acts and omissions in violation of TX DTPA, which violations present a continuing risk to Plaintiffs and Class Members.

55. As a direct and proximate result of Defendants violations of TX DTPA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage, to be further determined at trial.

56. Plaintiffs and Class Members are entitled to recover their actual damages under Tex. Bus. & Com. § 17.50(b) and attorneys' fees under Tex. Bus. & Com. § 17.50 (d).

57. Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Tex. Bus. & Com. § 17.50.

**COUNT II: VIOLATION OF FLORIDA'S UNFAIR &
DECEPTIVE TRADE PRACTICES ACT (Fla. Stat. § 501.201, et seq.)
(On behalf of the Nationwide Class or, alternatively, the Florida Subclass)**

58. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

59. Plaintiffs bring this action against Defendants on behalf of themselves and all others similarly situated against Defendants.

60. Plaintiffs and Class Members are "consumer[s]" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

61. Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

62. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

63. In the course of their business, Defendants ran a promotional campaign that enticed consumers to sign up for service bundles in order to receive up to a $400 Reward Card. However, after accepting Plaintiffs' and Class Members' money, Defendants sent Plaintiffs and Class Members Reward Cards that had already expired, sent an amount less than what was promised or did not send them at all, thereby depriving Plaintiffs and Class Members of receiving the specific benefit they were offered in exchange for signing up for the bundled services.

64. Defendants thus violated FDUPTA by, at a minimum employing deception, deceptive acts or practices, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of television service bundles.

65. Defendants engaged in misleading, false, unfair or deceptive acts or practices that violated FDUTPA by marketing a reward card program but failing to ensure that consumers actually receive a valid reward card.

66. Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Class Members.

67. Plaintiffs and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations. Plaintiffs and Class Members would not have purchased these bundles at all, or alternatively, would have purchased a different set of services, had they been aware of Defendants' unfair and deceptive acts or practice relating to its Reward Card program.

68. Plaintiffs and Class Members are at risk of irreparable injury as a result of Defendants' acts and omissions in violation of FDUTPA, which violations present a continuing risk to Plaintiffs and Class Members.

69. As a direct and proximate result of Defendants' violations of FDUTPA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage, to be further determined at trial.

70. Plaintiffs and Class Members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

71. Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under FDUTPA.

**COUNT III: NEGLIGENT MISREPRESENTATION**
**(On behalf of the Nationwide Class or, alternatively, the Florida Subclass)**

72. Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

73. Defendants misrepresented to Plaintiffs and Class Members the benefits and restrictions of the Reward Cards.

74. In the course of its business dealings with Plaintiffs and Class Members, Defendants omitted material information regarding the restrictions and limitations of the Reward Cards.

75. Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care when making or issuing statements or disclosures regarding the nature of the benefits and limitations of the Reward Cards.

76. The statements or disclosures regarding the restrictions and limitations of the Reward Cards were likely to deceive and confuse Plaintiffs and Class Members.

77. The referenced claims have also influenced or are likely to influence future decisions of consumers and the buying public. Plaintiffs and Class Members, by purchasing telecommunications bundles with the expectation of receiving a Reward Card, reasonably acted in reliance upon the purported truth of the representations and omissions made by Defendants.

78. As a direct and proximate result of the Plaintiffs' and Class Members' reliance upon the representations and omissions made (or not made) by Defendants, as described above, Plaintiffs and Class Members have sustained damages and ascertainable loss.

### COUNT IV: UNJUST ENRICHMENT
### (On behalf of the Nationwide Class or, alternatively, the Florida Subclass)

79. Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

80. Defendants have benefitted from an unjust profit and increased business related to its sale of television, internet and other telecommunications services using the deceptive marketing practice of promising up to a $400 promotional Reward Card, but failing to timely deliver such Reward Card.

81.  Defendants have received and retained unjust benefits from the Plaintiffs and Class Members, and inequity has resulted.

82.  It is inequitable and unconscionable for Defendants to retain these benefits.

83.  Because Defendants concealed its deceptive practices, Plaintiffs and Class Members were not aware of the true facts concerning the promotional Reward Card they were to receive and did they did not benefit from Defendants' misconduct.

84.  Defendants knowingly accepted the unjust benefits of its misconduct alleged herein.

85.  As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and Class Members, in an amount to be proven at trial.

### COUNT V: DECLARATORY RELIEF
**(On behalf of the Nationwide Class or, alternatively, the Florida Subclass)**

86.  Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

87.  Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

88.  Plaintiffs and Class Members allege that any arbitration provision in Defendants' documentation associated with the use of its Reward Cards are null and void to the extent that Plaintiffs and Class Members could not active and use such cards due to Defendants' wrongful practices alleged herein.

89.  Because all contractual provisions associated with the Reward Cards, including

17

AT&T's arbitration provision, are not accepted by the card recipient, Plaintiffs and Class Members here, until the Reward Card is activated and used, AT&T's contractual provisions, including the arbitration provision, are never accepted and are therefore inapplicable.

90. As detailed above, Plaintiffs and Class Members allege that Defendants' misrepresented the benefits of the Reward Card and inadequately disclosed information about restrictions on its use, rendering Plaintiffs and Class Members' acceptance of any contractual provisions associated with AT&T's Reward Cards, including its arbitration provision, a mistake of fact such that no meeting of the minds occurred regarding such provisions as between Plaintiffs and Class Members, on the one hand, and Defendants, on the other. Moreover, Defendants' misrepresentations concerning the benefits and restrictions of the Reward Card, renders the arbitration provision void *ab initio*.

91. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a. Defendants immediately shall provide Plaintiffs and Class Members with access to the full unused value of the Reward Cards they were issued; and

   b. The arbitration provision is null and void, *ab initio*, Defendants are not entitled to dismissal of this action on the basis of the arbitration provision, and Plaintiffs and Class Members are entitled to pursue their claims in this Court.

92. This Court also should issue corresponding prospective injunctive relief requiring Defendants to revise their disclosures relating to the Reward Card and modify their policies, procedures and practices regarding the marketing and distribution of such Reward Cards in any promotional context.

93. If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury, and lack an adequate legal remedy.

94. The hardship to Plaintiffs and Class Members if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued.

95. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public, as well as eliminate the additional injuries that would result to Plaintiffs and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

(i) An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs is a proper representative of the Class requested herein;

(ii) An order requiring Defendants to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

(iii) Compensatory and general damages according to proof;

(iv) Special damages according to proof;

(v) Treble damages pursuant to Tex. Bus. & Com. §§ 17.41, *et seq*. & Fla. Stat. § 501.201, *et seq*.;

(vi) Restitution and disgorgement according to proof;

(vii) Injunctive relief against Defendants to prevent future wrongful conduct;

(viii) Prejudgment interest at the maximum legal rate;

(ix) Costs of the proceedings herein;

(x) Reasonable attorneys' fees; and

(xi) All such other and further relief as the Court deems just.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury on all claims in this Class Action Complaint so triable.

Dated: March 3, 2022

ATTORNEYS'
LIEN CLAIMED

Respectfully submitted,

*s/William B. Federman*
William B. Federman,
TX Bar No. 00794935
John Charles Sherwood,
TX Bar No. 18254700
FEDERMAN & SHERWOOD
212 W. Spring Valley Road,
Richardson, Texas 75081
AND
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com
jcs@federmanlaw.com
*Counsel for Plaintiffs and
Proposed Co-Lead Counsel for the Class*

James M. Evangelista*
David J. Worley
Kristi Stahnke McGregor*
EVANGELISTA WORLEY, LLC
500 Sugar Mill Road
Suite 245A
Atlanta, GA 30350
Tel: (404) 205-8400
Facsimile: (404) 205-8395
jim@ewlawllc.com
david@ewlawllc.com
kristi@ewlawllc.com
*Counsel for Plaintiffs and
Proposed Co-Lead Counsel for the Class
*Admitted pro hac vice*