IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEVEN PALUMBO, *et al.*, § § Plaintiffs, § § v. § § AT&T SERVICES, INC., *et al.*, § § Defendants. § § § § § | Civil Action No. 3:21-CV-1818-N |

# MEMORANDUM OPINION AND ORDER

This Order addresses Defendants AT&T Services, Inc., and DirecTV, LLC's (collectively "AT&T") motion to compel arbitration [36]. Because AT&T has shown that the dispute falls within the scope of a valid arbitration agreement, the Court grants the motion.

## I. ORIGINS OF THE DISPUTE

This dispute arises from class action complaints filed by Plaintiffs Steven Palumbo and Jill Witte alleging that AT&T engaged in deceptive and unfair trade practices related to the issuance of rewards cards to induce new customers to contract for various services. Palumbo and Witte filed their initial complaints in August 2021 and February 2022 respectively. Witte's complaint alleged substantially similar claims to Palumbo's, and AT&T then filed an unopposed motion to consolidate, which the Court granted. AT&T filed this motion to compel arbitration pursuant to the arbitration clauses in the bundled television and internet services contract. Plaintiffs oppose the motion, arguing that the

MEMORANDUM OPINION AND ORDER – PAGE 1

dispute falls outside the scope of any binding arbitration provision and that they did not assent to the arbitration provisions that AT&T claims covers the disputes.

## II. MOTION TO COMPEL ARBITRATION STANDARD

The Federal Arbitration Act ("FAA") requires district courts to compel arbitration if they determine that there is a valid arbitration agreement encompassing the issues in dispute. 9 U.S.C. § 3; *see also Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019). Courts in the Fifth Circuit conduct a two-step inquiry when considering a motion to compel arbitration. First, a court must determine whether the parties agreed to arbitrate the dispute by considering "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). Second, if the claims are subject to a valid arbitration agreement, the Court must determine "whether any federal statute or policy renders the claims nonarbitrable." *Id.* Courts apply state contract law to determine whether the arbitration agreement is valid and if the claims are within its scope, and the party seeking to compel arbitration bears the burden of establishing these elements. *Halliburton Energy*, 921 F.3d at 530–31. "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam). Evidence presented to compel or resist arbitration must be competent summary judgment evidence. *See Gallagher v. Vokey*, 860 F. App'x 354, 358 (5th Cir. 2021) (unpub.).

### III. THE COURT GRANTS THE MOTION TO COMPEL ARBITRATION

Plaintiffs have not identified a federal statute or policy that renders Plaintiffs' claims nonarbitrable. Accordingly, the Court need only determine whether a valid and enforceable arbitration agreement covers the dispute at issue. Because AT&T has proven that Plaintiffs assented to the internet services agreement which covers the dispute at issue, the Court grants the motion.

#### A. Background on the Contested Agreements

There are two potential agreements at issue: the internet services agreement and the cardholder agreement. AT&T asserts that Plaintiffs signed an internet services agreement which has an arbitration provision covering the claims at issue. Plaintiffs argue that they did not properly assent to the internet services agreement, nor the cardholder agreement that they claim would logically cover the current dispute had it been accepted. Furthermore, Plaintiffs argue that no arbitration provision from their other agreements with AT&T covers their claims.

AT&T has provided evidence indicating that Palumbo and Witte signed agreements for bundled television and internet services with AT&T representatives on May 16, 2020, and October 12, 2021, respectively.[1] Pls.' Consol. Class Action Compl. ("CAC") ¶¶ 21–22, 24–25 [28]. Before signing these agreements, Plaintiffs registered online, confirmed their account, logged in using an account number and password, clicked continue to view

---

[1] While allegations in the complaint are not competent summary judgment evidence, factual allegations in the live pleading are admissions properly considered at summary judgment. *See Morales v. Dept. of Army*, 947 F.3d 766, 769 (5th Cir. 1991).

MEMORANDUM OPINION AND ORDER – PAGE 3

the terms and conditions page containing hyperlinks to various provisions of the agreement, checked a box confirming their agreement with the relevant terms, and then clicked the continue button below a statement acknowledging that they had read and agreed to the terms and conditions.[2]  Defs.' App. 1–11, Green Decl. ¶¶ 4–10, 20–41 [37].  Plaintiffs claim not to recall signing this agreement through the process AT&T describes.  Pls. Br. Opp. Defs. Mot. Compel Arb. 3, 7 [40].  This internet services agreement contained an arbitration provision stating that the parties "agree[d] to arbitrate all disputes and claims between [plaintiffs] and AT&T . . . arising out of or relating to any aspect of the relationship between us, whether based in . . . fraud, misrepresentation, or any other legal theory," as well as "claims related to advertising."  Defs.' App. 31, 61.

Plaintiffs point to the cardholder agreement as the putative contract governing the use of the rewards card.  In its email to Plaintiffs informing them of their eligibility for the reward card, the cardholder agreement governing reward card use is attached.  Pls.' App. 7–8 [41].  This cardholder agreement also contains an arbitration provision covering claims "arising out of or relating in any way to" the cardholder agreement, the card, or Plaintiffs' acquisition or use of the card.  *Id*. at 23.  Recipients of the rewards card are instructed that "[a]ctivating the card means that you accept this Agreement."  *Id*. at 37.  Plaintiffs assert, and AT&T does not argue otherwise, that they did not activate the rewards card, and therefore did not assent to the cardholder agreement.

---

[2] AT&T has also provided the transcript of the call where an AT&T service representative guided Witte through the online registration process which she completed on her own device.  Defs.' Reply App. 25–31 [45].

MEMORANDUM OPINION AND ORDER – PAGE 4

### B.  AT&T Has Met Its Burden to Show a Valid Arbitration Agreement Exists

### 1.  *The Internet Services Agreement Satisfies the Elements of a Binding Contract.*

– The Court holds that AT&T has met its initial burden to show the existence of an arbitration agreement.  AT&T has shown that New York law applies due to the contractual choice of law provision, and Plaintiffs have not argued otherwise.  Defs.' Br. Supp. Mot. Compel Arb. 27 [36].  New York law requires a contract to include an offer, acceptance, consideration, mutual assent, and intent to be bound.  *See, e.g.*, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004).  Courts examine the totality of the circumstances to determine whether there has been a meeting of the minds.  *United States v. Sforza,* 326 F.3d 107, 116 (2d Cir. 2003).

AT&T has provided sufficient evidence that Palumbo and Witte entered into binding contracts containing arbitration provisions.  Palumbo and Witte signed agreements for bundled television and internet services with AT&T representatives on May 16, 2020, and October 12, 2021, respectively.  Pls.' Consol. Class Action Compl. ("CAC") ¶¶ 21–22, 24–25 [28].  Before signing these agreements, Plaintiffs registered online, confirmed their account, logged in using an account number and password, clicked continue to view the terms and conditions page containing hyperlinks to various provisions of the agreement, checked a box confirming their agreement with the relevant terms, and then clicked the continue button below a statement acknowledging that they had read and agreed to the terms and conditions.  Defs.' App. 1–11, Green Decl. ¶¶ 4–10, 20–41.  Only after

completing all of these steps could Plaintiffs access AT&T's services. As such, the Court finds that Plaintiffs assented to be bound by the internet services agreement.

Plaintiffs claim that they do not recall ever completing an online registration process related to the internet services agreement. *Id*. at 3, 7. Importantly, they do not unequivocally deny that they agreed to the internet services agreement; rather, they claim not to remember doing so. AT&T need only prove the existence of the contract by a preponderance of the evidence: Palumbo and Witte's inability to remember does not negate the evidence provided as to AT&T's routine business processes, the transcript of Witte's call with AT&T,[3] and AT&T's business records confirming Plaintiffs' assent. *See Ameriprise Fin. Servs, Inc. v. Etheredge*, 277 F. App'x. 447, 449 (5th Cir. 2008) (affirming order compelling arbitration where plaintiff did not recall signing the document but never denied the authenticity of his alleged signature). Because the arbitration agreement satisfies the elements of a contract under New York law, a contract exists unless Plaintiffs can establish a defense to contract formation.

***2. Plaintiffs Have Not Established a Defense to Contract Formation. –*** Plaintiffs do not explicitly argue any defenses to contract formation, but reference unconscionability when arguing that the Court should not apply AT&T's "infinite arbitration agreements" to the current dispute. *See* Pls. Br. Opp. Defs. Mot. Compel Arb. 24– 26. While the agreement's claimant-friendly provisions have no bearing on the validity analysis, the

---

[3] The transcript disproves Plaintiffs' assertion that Witte did not complete the online registration process, bolstering AT&T's evidence that AT&T's service representatives follow routine business procedure in signing up new customers.

MEMORANDUM OPINION AND ORDER – PAGE 6

Court considers the provisions in relation to unconscionability. As AT&T notes, the provision provides for cost-free arbitration paid for by AT&T, a minimum award of $10,000 to the consumer, possible double attorneys' fees, flexible procedures, convenient locations, with full individual remedies available. Defs.' Br. Supp. Mot. Compel Arb. 20–21 [36]. The agreement's arbitration provision is not unconscionable, and Plaintiffs have not established a defense to contract formation.

***3. All of Plaintiffs' Claims Fall Within the Scope of the Arbitration Provision. –*** Palumbo and Witte are pursuing claims for violation of the Texas Deceptive Trade Practices Act, Florida's Unfair and Deceptive Trade Practices Act, negligent misrepresentation, unjust enrichment, and declaratory relief. CAC ¶¶ 43–95. These claims are all premised on the allegation that the marketing of the rewards cards was deceptive or misleading. The arbitration provision in the internet services agreement covers "all disputes and claims between [plaintiffs] and AT&T . . . arising out of or relating to any aspect of the relationship between us, whether based in . . . fraud, misrepresentation, or any other legal theory," as well as "claims related to advertising." Defs.' App. 31, 61. Plaintiffs' claims fall entirely within the realm of misrepresentation and advertising, and accordingly, the arbitration provision applies.

Plaintiffs argue that as between the cardholder agreement and the internet services agreement, their claims about the rewards card fall outside the internet services agreement. Plaintiffs in effect argue that if they had assented to the cardholder agreement, that would have effected a modification of the internet services agreement to exclude claims related to the rewards card from the internet services agreement arbitration provision – the specific

MEMORANDUM OPINION AND ORDER – PAGE 7

controls over the general. But because Plaintiffs did not assent to the cardholder agreement, they contend, there is no arbitration agreement relating to the rewards card. The flaw in their argument, though, is that they did not assent to the cardholder agreement. Thus, there was no effective modification of the internet services agreement. The question before the Court is not which agreement would have controlled if the parties had entered into both; it is simply whether, standing alone, the internet services agreement's arbitration provision encompasses this dispute. As discussed above, the claims fall within the scope of the internet services agreement's arbitration provision, and accordingly, the Court grants the motion to compel arbitration.

### IV. DISMISSAL OF PLAINTIFFS' CLAIMS IS APPROPRIATE

The FAA provides that a stay is mandatory when a plaintiff brings suit upon an issue referable to arbitration under a valid arbitration agreement. *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999). However, if "all of the issues raised before the district court are arbitrable, dismissal of the case is not inappropriate." *Id*. (noting that staying the case would serve no purpose where any post-arbitration remedies sought by the parties would not entail renewed consideration and adjudication of the merits). In *Fedmet*, the Fifth Circuit noted the mandatory stay requirement means only that a district court "cannot deny a stay when one is properly requested," and that it "was not intended to limit dismissal of a case in the proper circumstances." *Id*. Because all of Plaintiffs' claims against AT&T are subject to arbitration, a stay would serve no purpose and dismissal of the claims is appropriate.

## CONCLUSION

AT&T has met its burden to show a valid arbitration agreement exists and that Plaintiffs' claims against it fall within the scope of that agreement. Palumbo and Witte have failed to show that the agreement is otherwise invalid or unenforceable. Accordingly, the Court grants the motion and exercises its discretion to dismiss all of Plaintiffs' claims against AT&T without prejudice.

Signed March 14, 2023.

David C. Godbey
Chief United States District Judge